Filed 1/20/23 P. v. Mazyck CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| THE PEOPLE, | C096391 |
| Plaintiff and Respondent, | (Super. Ct. No. 62173879) |
| v. | |
| WALTER RONALD MAZYCK, JR., | |
| Defendant and Appellant. | |

A jury found defendant Walter Ronald Mazyck, Jr., guilty on two counts of possessing identifying information with the intent to defraud. (Pen. Code, § 530.5, subd. (c)(2).)[1] Defendant admitted being previously convicted of the same offense and the trial court found true four circumstances in aggravation. The court subsequently sentenced defendant to a split sentence: 16 months in county jail and 20 months on mandatory supervision.

---

[1] Undesignated statutory references are to the Penal Code.

1

On appeal, defendant contends the trial court erred in admitting into evidence his possession of four debit cards that did not form the basis of either offense with which he was charged. He also claims his trial counsel was ineffective and the cumulative errors were prejudicial. We will affirm the judgment.

BACKGROUND

On July 26, 2020, at approximately 3:00 a.m., defendant was driving to a casino in Placer County. Along the way, in a semirural area, Placer County Sheriff's Deputy Stanislav Semenuk initiated a traffic stop of the car defendant was driving. During the stop, defendant gave Deputy Semenuk his identification, and Semenuk conducted a lawful search of the car.

In the back of the car, inside a gray bag, Deputy Semenuk found a wallet containing identification, credit cards, and bank cards, all belonging to Jesus Salazar. He also found a blank check and social security card, both of which belonged to Gaylene Quintana. At the front of the car, in the visor area between the front seats, Semenuk found more credit cards and bank cards.[2] The face of each card listed a different name.

The People later charged defendant with two counts of possessing identifying information with the intent to defraud (§ 530.5, subd. (c)(2)), identifying the victims as Salazar and Quintana and alleging defendant was previously convicted of the same offense. The People also alleged nine circumstances in aggravation and that defendant was ineligible for parole unless the court found unusual circumstances. (§ 1203, subd. (e)(4).)

Defendant pled not guilty.

_____

[2] Both in the trial court and on appeal, the parties refer to "four" bank and credit cards. The exhibits submitted, however, show five cards.

*Motions In Limine*

Prior to trial defendant filed, among other motions, a motion to preclude "improper opinion testimony going to the ultimate issue." Specifically, defendant moved to "preclude any testimony respecting any witness' belief that the Defendant violated or possibly violated such statute." He wanted the prosecution's witnesses to be "limited to testifying about their direct observations." When questioned about that motion at the hearing on motions in limine, defendant replied, "[t]hat was a typo on my part, your Honor. We can withdraw this one."

The court also considered the prosecutor's motion to introduce "the additional cards found in the defendant's possession" as uncharged criminal conduct under Evidence Code section 1101, subdivision (b). The prosecutor argued the cards were evidence of intent and the absence of mistake. Defendant did not offer a written opposition to the motion, but at the hearing on the motions in limine, defendant argued the cards should be excluded because they were not previously turned over to the defense and they were hearsay evidence.

The prosecutor established the cards had indeed been given to the defense; the court found the hearsay argument unavailing. The court ruled as follows: "[T]he Court does find that this evidence is specifically relevant and admissible under [Evidence Code section] 1101[, subdivision] (b) to show intent, to show absence of mistake, as identified in the [People's] brief. I don't find this evidence is substantially outweighed by any prejudicial effect in this case, so that evidence will be allowed."

*Salazar's Testimony*

Salazar testified at trial. He did not know defendant and had never seen him before. He identified the wallet found in defendant's car as his wallet, and indicated he never gave anyone permission to use his wallet. He testified he had not seen his wallet since the end of 2019. Salazar initially thought he dropped it somewhere until he found a "strange charge" on his credit card at a smoke shop in North Highlands. Once that

3

happened, he reported to work and the DMV that his wallet was stolen. He canceled all his credit cards and executed a cancelation statement for his military identification.

*Quintana's Testimony*

At trial, Quintana testified that in March 2020 she was renting a room from defendant's sister. Quintana and defendant were dating and, for about a month, shared that room. In their room, Quintana kept her checkbook and her social security card with other legal documents in a dark, plastic container, about the size of a shoe box, on the left side of the bed she shared with defendant. Defendant stored his things on the other side of the bed.

Quintana never gave defendant permission to have any of her checking account information, use her debit card, or possess her social security card. Quintana testified that she never took these things out of the container in defendant's presence, and she never left loose checks laying around. Normally, she kept her checkbook and social security card in storage; they were in the box in their room because she recently applied for a job.

In April 2020, when Quintana asked defendant to contribute to the rent, he moved out. Quintana remained. She could not remember defendant coming back to the house after he moved out and she did not know where he was living. During that time, however, Quintana was exposed to COVID-19 and remained out of the house for four days.

On May 1, 2020, Quintana moved out. She took everything with her, leaving behind only a can of paint. In July, when defendant was found in possession of her blank check, Quintana still had her checkbook; she did not realize a check was missing. She also did not realize her social security card was missing. She testified there were no fraudulent bank charges.

4

*Verdict and Sentence*

Following the submission of evidence and argument, the jury found defendant guilty on both counts of possessing identifying information with the intent to defraud; however, they found not true four of the alleged aggravating circumstances. Defendant admitted to being previously convicted of possessing identifying information with the intent to defraud, and the court found true four aggravating circumstances. The court sentenced defendant to an aggregate term of three years but ordered the sentence split: defendant would serve 16 months in county jail, the remaining 20 months would be suspended and defendant would be released on mandatory supervision.

DISCUSSION

I

*Additional Bank and Credit Cards*

Defendant contends the trial court abused its discretion in admitting four bank and credit cards found in the front of defendant's car. Relying on Evidence Code section 352, defendant argues the cards were "not substantially probative" on the issue of intent because the prosecutor did not prove the cards belonged to actual people. If the cards were probative, he contends, they were cumulative and unduly prejudicial. Defendant forfeited this claim by failing to raise an Evidence Code section 352 objection in the trial court.

"To preserve a claim that a trial court abused its discretion in not excluding evidence under Evidence Code section 352, 'a party must make a timely and specific objection when the evidence is offered.' " (*People v. Harrison* (2005) 35 Cal.4th 208, 230-231; see also *People v. Valdez* (2012) 55 Cal.4th 82, 138-139; *People v. Alexander* (2010) 49 Cal.4th 846, 905.) "Under . . . section 353, subdivision (a), a reviewing court cannot grant relief on a claim that evidence was erroneously admitted unless a timely objection was made 'and so stated as to make clear the specific ground of the objection or motion.' ' "What is important is that the objection fairly inform the trial court, as well as

5

the party offering the evidence, of the specific reason or reasons the objecting party believes the evidence should be excluded, so the party offering the evidence can respond appropriately and the court can make a fully informed ruling." ' " (*People v. Hajek and Vo* (2014) 58 Cal.4th 1144, 1214.)

During motions in limine, the prosecutor moved to admit the additional bank and credit cards found in defendant's car to show intent and absence of mistake pursuant to Evidence Code section 1101, subdivision (b). Defense counsel objected. He raised only two objections: lack of production and hearsay. He did not challenge the evidence on the grounds he raises on appeal. Accordingly, the claim is forfeited.

II

*Ineffective Assistance of Counsel*

Defendant raises two claims of ineffective assistance of counsel. He first contends he received ineffective assistance when defense counsel failed to object when Deputy Semenuk testified that, in his opinion, defendant possessed identifying information of Salazar and Quintana, with the intent to defraud them. He contends that he again received ineffective assistance when defense counsel failed to object to Deputy Semenuk's testimony that the area where he stopped defendant was a high crime area. Assuming the testimony was inadmissible, we find defense counsel may have had a sound tactical reason for not raising these objections and thus find no ineffective assistance of counsel.

A.    *Legal Principles*

The burden of proving ineffective assistance of counsel is on the defendant. (*Strickland v. Washington* (1984) 466 U.S. 668, 687.) To establish constitutionally inadequate representation, a defendant must show that (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense. (*Ibid*.)

We defer to trial counsel's reasonable tactical decisions to examine a claim of ineffective assistance of counsel. (*People v. Weaver* (2001) 26 Cal.4th 876, 925.) On

6

direct appeal, "competency is presumed unless the record affirmatively excludes a rational basis for the trial attorney's choice." (*People v. Musselwhite* (1998) 17 Cal.4th 1216, 1260, italics omitted.) "If the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged, an appellate claim of ineffective assistance of counsel must be rejected unless counsel was asked for an explanation and failed to provide one, or there simply could be no satisfactory explanation." (*People v. Gray* (2005) 37 Cal.4th 168, 207.) Mere speculation is insufficient to support a finding of ineffective assistance of counsel. (*People v. Williams* (1988) 44 Cal.3d 883, 933.) Failure to object rarely constitutes deficient counsel performance. (*Gray*, at p. 207.)

B.      *Deputy Semenuk's Testimony on Defendant's Intent*

Defendant argues Deputy Semenuk's opinion that defendant possessed Quintana's and Salazar's identifying information with the intent to defraud them was inadmissible; trial counsel should have objected. Counsel's failure to object, he argues, rendered his assistance ineffective. We disagree.

1.      *Additional Background*

During Deputy Semenuk's testimony, the following exchange took place between the deputy and the prosecutor:

"Q[:] Now, we previously spoke about some of the hallmarks of identity theft that you look for. Now, based on all your training and experience when it comes to identity theft, do you have an opinion in this case as to whether or not the defendant possessed the personal identifying information of Jesus Salazar and Gaylene Quintana with the intent to defraud?

"A[:] Yes.

"Q[:] What is that opinion?

"A[:] My opinion, based on nearly a decade of proactive policing and investigations pertaining to the subject matter, is that the defendant did possess these items for an unlawful reason. He possessed them unlawfully, but he also possessed them

7

with an unlawful reason. And that opinion is based on, once again, hundreds, if not thousands, of these investigations. And this is how it starts. You start with just being in possession of someone's name, their date of birth, and even better than that their Social Security number.

"And once you have that trifecta, you can continue on with the fraudulent process of ruining people's lives and taking money from them in their name. So that, to me, substantiated the bare minimum of identity theft. And from here on forward, who knows how bad it could potentially get.

"Q[:] Now, your opinion, is that based on their being more than one personal identifying information in the car?

"A[:] Yes."

On cross-examination, defense counsel engaged Deputy Semenuk as follows:

"Q[:] At the police academy, you learned intent is a critical consideration; correct?

"A[:] It is.

"Q[:] Okay. So possession plus intent is what is needed; correct?

"A[:] In some cases.

"Q[:] You are not currently on any type of ID theft task force or specialized agency; correct?

"A[:] No.

"Q[:] And it's my understanding that you current work as a K-9 officer?

"A[:] Correct."

2.    *Analysis*

Assuming this testimony was inadmissible, we can discern a tactical decision to forego making an objection. Rather than objecting to Deputy Semenuk's opinion, counsel used cross-examination to minimize the deputy's experience and knowledge of identity theft crimes. Counsel was able to get Semenuk to admit he had no specialized

8

training in identity theft crimes. Semenuk also testified that he worked as a standard patrol deputy, operating with a dog, and not as part of an identity task force or similarly specialized unit of the sheriff's department. Moreover, Deputy Semenuk's only training on the specific question of intent was in the police academy. It was reasonable for counsel to address the issue in cross-examination rather than lodging an objection, which would only serve to draw attention to that part of the testimony. Furthermore, had defense counsel objected to the testimony the prosecutor could have articulated a line of hypothetical questions that mirrored the evidence already admitted in the trial to elicit the same opinion testimony. Testimony admitted in response to hypothetical questions would also have drawn additional attention to the opinion testimony. Thus, there was yet another reasonable tactical reason to forego making an objection. (*People v. Mai* (2013) 57 Cal.4th 986, 1009.) Defense counsel's performance was not deficient.

C.       *Deputy Semenuk's Testimony About the Area Where He Stopped Defendant's Car*

Defendant also contends trial counsel was ineffective for failing to object when Deputy Semenuk testified "in a manner which portrayed [defendant] as an opportunistic criminal, seeking to victimize the citizens of Placer County, based merely upon the area and time of night where his vehicle was stopped." We disagree.

1.       *Additional Background*

After the victim witnesses testified, the prosecutor recalled Deputy Semenuk to the witness stand. Semenuk testified that when he initiated the stop of defendant's vehicle, defendant was driving on a road that directly connects Sacramento to a major casino in Placer County. The prosecutor asked if the night shift was different from the day shift; Semenuk said that "at night what typically happens is the calls are far fewer in frequency, but when the calls do come in, they are usually a lot more intense . . . . The calls are more severe when they do come in."

When calls were not coming in, Deputy Semenuk described his job as "proactive policing, so I try to locate criminal activity and investigate making sure our citizens

9

aren't being victimized by people looking to break in cars or break in houses, stealing things, stuff like that." He told the prosecutor that, at 3:00 a.m., he also is "more aware" of the cars that pass by. At that time of night, he explained, there are "a lot of drunk drivers and a lot of people engaging in criminal activity. [¶] So as a proactive police officer, that's the time of night where we find most of the more heinous things we would come across. We try to stop cars, pursuits get initiated, all -- like, just a plethora of bad things happen and it's usually around this time of night."

Deputy Semenuk also testified that the area where he stopped defendant's car was a "high crime" area. "[The casino] attracts a tremendous amount of criminal[] [activity] from all over Northern California. Just my personal experience, some of my most -- some of the worst things that have happened in my career have revolved around the area around [the casino], meaning those are the worst of the worst I have encountered that have fought us, have had guns on them, all kinds of bad things happen to and from that casino."

On cross-examination, Deputy Semenuk described a phenomenon he referred to as "criminal tourism." "People from other places come into Placer County and victimize our citizens. Because our citizens aren't used to criminal activity, a lot of our folks keep their cars unlocked, front doors unlocked to the houses, so there's a lot of complacency that takes place in Placer County. That's a major attractant for criminals up from Sacramento and the Bay Area. They come into our county to victimize our citizens."

2. *Analysis*

Again, assuming this testimony was inadmissible, we find counsel could have made a tactical decision not to object. Counsel could have allowed the testimony to remain because it reflected the witness's own biases against visitors to the casino such as defendant. Alternatively, counsel could have determined through his interaction with and observation of the jurors that they did not find the deputy's testimony regarding this stretch of road to be persuasive or compelling. Counsel also could have reasonably

10

perceived that the jury was receiving the testimony only as reflecting Deputy Semenuk's state of mind at the time of the vehicle stop, rather than characterizing defendant himself in a manner that was necessarily negative. Whatever the basis for the decision, it was not clearly unreasonable for counsel to leave the testimony unobjected to and uncontradicted. We do not find trial counsel's performance deficient.

Further, a petition for habeas corpus is the more appropriate mechanism to raise claims of ineffective assistance of counsel where it was not clearly unreasonable for defense counsel not to object to the challenged testimony but it is not clear why counsel made the decision that they did. Where the record does not establish that defense counsel's performance fell below an objective standard and is otherwise silent as to the basis for the challenged inaction, a habeas corpus petition is the more appropriate means to establish a claim of ineffective assistance. (*People v. Pope* (1979) 23 Cal.3d 412, 426, overruled on another ground in *People v. Berryman* (1993) 6 Cal.4th 1048, 1081, fn. 10.)

III

*Cumulative Error*

Defendant contends the accumulation of errors he argues on appeal rendered his trial fundamentally unfair. Having found no error, we can find no cumulative error.

## DISPOSITION

The judgment is affirmed.

/s/
BOULWARE EURIE, J.

I concur:

/s/
DUARTE, J.

I concur in the result:

/s/
ROBIE, Acting P. J.

12